**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 16-CV-21502-LENARD/GOODMAN**

**ALEJANDRO AGUSTIN AMODEI**,

      Plaintiff,

vs.

**FLORIDA BEAUTY EXPRESS, INC.,**
and **RALPH MILMAN,**

      Defendants.

_____/

<u>**DEFENDANTS' AMENDED OPPOSITION TO PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES**</u>

Plaintiff's counsel (Mr. Zidell) demands a fee of $21,624.50, which is outrageous and in bad faith.[1]  This case concerns only one claim under the FLSA for unpaid overtime wages. There were no depositions.  There were no hearings.  There were no discovery requests before defendant served its offer of judgment.  In fact, Plaintiff served discovery for the first time more than five hours after Mr. Zidell received the offer of judgment.   The only compensable work Mr. Zidell's law firm performed is as follows:

(1)     Draft a one-count complaint;

(2)     Partly draft a joint scheduling report;

(3)     Partly draft two one-page joint motions for extension of time [DE 27 and 36];

(4)     Attend a 3-hour judicial settlement conference; and

(5)     Very brief settlement discussions with the Court and opposing counsel after the judicial settlement conference and culminating in defendant's offer of judgment.

Mr. Zidell's law firm repeatedly attempted to extort an exorbitant fee payout. Mr. Zidell's law firm refused to answer reasonable inquiries as to the magnitude of its fees/costs so defendants could globally settle damages and fees/costs.   Because Mr. Zidell refused to disclose how much are his fees/costs to settle, defendant made an offer of judgment.   At that point, Mr. Zidell exaggerated his legitimate fees while threatening more fee liability if defendants dared to challenge the exaggerated fee demand.   This abused the judicial process.   In other words, Mr. Zidell grossly exaggerated his fee demand, and then used that exaggeration as a weapon to extort more fees from defendants.   He and his associate repeatedly threatened that defendants would face the danger of increasing liability consisting of "fees for the effort of

---

[1] The attached spreadsheet (Exhibit 1 hereto) assigns a number to each time entry Mr. Zidell submitted and includes defendants' objections to facilitate the Court's review.   The original content of Mr. Zidell's time entries is preserved in the attached spreadsheet.

recovering fees." They also threatened it would cost defendants much more to defend against the fee motion than to pay his exorbitant fee demand. As an officer of the Court and an 18-year veteran attorney specializing in FLSA practice, Mr. Zidell knew or should have known he was not acting reasonably. He was attempting to coerce defendants into paying an inflated fee. Mr. Zidell's law firm's extortion attempts are attached hereto as Exhibit "2." Despite his clear bad faith, Mr. Zidell will likely seek additional fees to review this Opposition and draft a reply brief. Mr. Zidell's outrageous and bad faith fee demand required defendants to spend substantial time ferreting out Mr. Zidell's bad faith fee entries and explaining his bad faith to the Court. Mr. Zidell should not be rewarded with any more fees for causing such effort.

This Opposition is organized into two parts. Part I addresses Mr. Zidell's and his law firm's bad faith litigation tactics and explains why Mr. Zidell's fee demands should be denied entirely. Part II alternatively argues that Mr. Zidell's unreasonable fee demand must be substantially reduced, after the Court excludes non-compensable work from the lodestar, because of his bad faith and because his degree of success was only 18% of plaintiff's damage demand.

## FACTUAL BACKGROUND

Plaintiff filed his complaint [DE 1] on April 28, 2016. On May 20, plaintiff filed his statement of claim [DE 8] seeking $41,277.50 as damages. Shortly thereafter, defendants filed two unopposed motions for extension [DE 10 and 16] to respond to the complaint. Defendants filed their answer [DE 18] on June 17. The parties filed two one-page joint motions [DE 27 and 36] for extensions to complete a judicial settlement conference, i.e., on July 5 and July 29.

On September 16, 2016, the parties attended a judicial settlement conference [DE 41], which lasted 3 hours. Thereafter, the parties engaged in brief settlement discussions.

On September 27, 2016 at 1:15 p.m., defendant served by email the offer of judgment that plaintiff ultimately accepted (Exhibit 3 hereto and DE 47).

Before serving the offer of judgment, defendant attempted to globally resolve the damages and fees/costs at issue, which are detailed here.  On September 19, Mr. Zidell's law firm offered to globally settle for $22,500, i.e., inclusive of damages and attorneys' fees/costs. Counsel Emails (Exhibit 2 hereto) at p. 5.  On September 20, the undersigned counsel asked Mr. Zidell's law firm, "[o]f your $22,500 offer, how much is apportioned to fees/costs …?"  *Id.* at p. 4.  Mr. Zidell's law firm refused to answer and instead confirmed, "[t]he $22,500 is a global offer."  *Id.*  The undersigned counsel then again inquired, "what are the fees/costs you seek in connection with your $22,500 offer."  *Id.*  Mr. Zidell's law firm again refused to answer and asked, "[w]hat are your fees and costs to date?  Ours are obviously higher."  *Id.* at p. 3.  The undersigned counsel then confirmed, "I take it from your answer that you refuse to disclose your fees/costs as a component of your $22,500 global settlement offer."  *Id.*  As punishment for inquiring about its fees/costs, Mr. Zidell's law firm immediately thereafter increased the settlement offer from a "global" settlement of $22,500 to $22,500 ***plus*** fees: "I am renewing the settlement demand of $22,500 … and we can let the Court decide our fees."  *Id.* at p. 2.

Twenty minutes after defendant served its offer of judgment, Mr. Zidell's law firm emailed the undersigned counsel asking "[h]ow much would your client be willing to put on the table for fees and costs to avoid us filing a Motion for same ***as we would be entitled to fees on fees for this***."  Counsel Emails (Exhibit 2 hereto) at p. 7 (emphasis added).  The undersigned counsel responded stating, "I have asked you repeatedly for your fees/costs to date so we may settle this case.  You have refused to disclose anything.  I do not consider your doing this to be in good faith.  It simply runs up attorney's fees for no valid reason."  *Id.*

After defendant emailed its September 27 offer of judgment, plaintiff engaged in needless case activity.  Over 5 hours ***after*** defendant served its offer of judgment, Mr. Zidell's law firm served plaintiff's first set of discovery requests.  Discovery (Exhibit 4 hereto) at p. 1.  That same day, Mr. Zidell's law firm emailed a redundant notice of depositions even though Mr. Zidell's law firm had already served a notice of deposition the previous month.  *Id.* at p. 2-6.

Plaintiff accepted the offer of judgment on October 10, 2016 [DE 47].

On October 11, Mr. Zidell's law firm offered to settle his fee/cost demand for an unreasonable $12,500.  Counsel Emails (Exhibit 2 hereto) at p. 12.  In good faith, defendants offered to settle Mr. Zidell's fee/cost demand for $5,500 on October 13 and raised their offer to $6,800 on October 24.  *Id.* at pp. 9-10.  Despite numerous emails and telephone calls, neither Mr. Zidell nor any of his associates ever reduced the unreasonable fee demand of $12,500.  Instead, Mr. Zidell threatened that "time spent litigating 'fees on fees' is compensable.  So, come back to us with at least a close number to $12,500 for fees and costs before we have to file the motion."  *Id.* at p. 10.  After a 7-minute telephone conference between counsel on December 7, Mr. Zidell's law firm refused to lower the unreasonable fee demand and instead repeated the threat: "It obviously is going to cost your client in fees to litigate the fee motion."  *Id.* at p. 14.

Thereafter, Mr. Zidell's law firm filed a meritless motion to strike defendants' notice of settlement [DE 50] even though the case settled by plaintiff's acceptance of the offer of judgment.  The Court denied the motion as moot [DE 56].

Defendant has already paid the full amount of (1) plaintiff's demanded costs of $980 and (2) the $7,500 damages amount of the offer of judgment.

Now Mr. Zidell's fee motion demands an exorbitant $21,624.50 in fees.

## ARGUMENT

**I.     Mr. Zidell's bad faith strongly supports a complete denial of fees.**

Mr. Zidell and his law firm have treated their motion for fees as an opening bid in fee negotiations with the Court.  Mr. Zidell and his law firm's billing misconduct caused substantial damage to defendants because it forced defendants to wade through Mr. Zidell's 109 billing entries to show the Court the numerous entries that are grossly excessive and made in bad faith. Defendants have paid plaintiff himself in full under the Offer of Judgment, and have paid in full Mr. Zidell's demanded costs.  As an officer of the Court, Mr. Zidell's own fees are at issue here, not his client's fees.   Mr. Zidell abused his position as an officer of court by making an exorbitant fee demand, and by trying to get that demand paid by threatening enhanced fee liability to himself. Mr. Zidell seeks to punish defendants because they oppose his fee demand as excessive, unfair, and unjust.  In addition, Mr. Zidell abused his position as an officer of the Court by demanding an inflated fee while threatening that defendants will need to spend more to defend against this injustice than pay him something he never earned.

There is no way that Mr. Zidell's demand for over $21,000 in fees is reasonable, especially because defendant served its offer of judgment before any discovery was served. Neither party in this case appeared for any hearings, answered any discovery requests, or conducted any depositions.  In other words, there was almost no work done in this case.  In addition, Mr. Zidell concedes (DE 60 at p. 4) that he "has been primarily handling FLSA cases, similar to the instant lawsuit, for approximately 18 years."  He could have resolved this case efficiently, but refused to do so.  In view of his extensive experience with the FLSA, Mr. Zidell's fee demand shows a complete lack of candor as to legitimate billing.  *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168, 1188 (S.D. Fla. 2012) ("[A] fee applicant must exercise sound 'billing judgment' and eliminate time entries that are excessive or unnecessary").

The Court should not award any fees to Mr. Zidell because his fee demand exhibits bad faith, i.e., a special circumstance rendering any fee award to Mr. Zidell unjust. *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-03, 88 S. Ct. 964, 966-67 (1968) (finding that a prevailing Title II plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust"); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) ("There are 'special circumstances' that can render such an award of attorney's fees unjust"). Mr. Zidell believes he can "start high" in his bid for attorneys' fees, and even if the Court were to award a smaller fee, Mr. Zidell would still be paid more than his legitimate billable time. "When faced with such an absurdly excessive fee request [under the FLSA] … the court may be justified in simply denying the request summarily. … There is no point in requiring defendants to spend time or money responding to this motion." *Coan v. Nightingale Home Healthcare*, No. 1:05-cv-0101-DFH-TAB, 2006 U.S. Dist. LEXIS 78672, at *3 (S.D. Ind. Oct. 27, 2006). "[A]n entitlement to attorney's fees [under the FLSA] cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction." *Goss*, 248 F. Supp. 2d at 1168. "Courts are not authorized to be generous with the money of others." *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Even if the Court were to reduce Mr. Zidell's fee by 80%, the reduced award (i.e., $4,324.90) would be excessive. A reasonable fee with the minimal legitimate work performed would have been about $2,500. Due to Mr. Zidell's out-of-the-ballpark fee demand, and the wasted resources of the Court and defendants in ascertaining the lack of merit in the fee demand, the Court, respectfully, should award no fees.

While the FLSA's fee award provision is mandatory, as opposed to the discretionary fee provision under 42 U.S.C. § 1988, review of case law addressing "shake down" fee demands

under § 1988 would assist the Court because they address bad faith as a "special circumstance" to deny a fee award.   Case law on comparable fee demands under 42 U.S.C. § 1988 has held that if "the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence … would be reduction of their fee to what they should have asked for in the first place." *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991) (reversing fee award to a prevailing plaintiff under 42 U.S.C. § 1988); *Fair Hous. Council v. Landow*, 999 F.2d 92, 96-97 (4th Cir. 1993) (reversing fee award to a prevailing plaintiff under 42 U.S.C. § 1988: "we think the FHC's argument would encourage fee requests which are nothing more than 'an opening [bid] in negotiations to reach an ultimate result.'   District Courts are not open to such gaming on the part of litigants").   "[A]n award of attorney's fees is compensatory, not punitive, and we will not allow a threat of paying the opposing party's unreasonable legal fees to chill the assertion of a defense of a claim. … [F]ee awards should not serve as a vehicle to charge exorbitant fees." *Peter v. Jax*, 187 F.3d 829, 838 (8th Cir. 1999) (affirming denial of fee demand of plaintiff under 42 U.S.C. § 1988).

### A.      17.2 hours ($5,863) to coerce an exaggerated "fee" payout is in bad faith.[2]

Before plaintiff accepted the offer of judgment [DE 47], Mr. Zidell's law firm offered to settle plaintiff's case for $22,500 inclusive of attorneys' fees and costs (Exhibit 2 hereto at p. 5). The undersigned counsel thereafter asked Mr. Zidell's law firm how much of the $22,500 offer was apportioned to fees/costs.  Exhibit 2 hereto at p. 4.  That inquiry was reasonable because "counsel for the claimant must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees …. It is the Court's responsibility to ensure that

---

[2] Fee Entries (Exhibit 1 hereto) at Nos. 50-51, 53, 66, 74-76, 79, 81-84, 86, 89-90, 92-95, 98-109.

any such allocation is reasonable." *Liberatore v. AAA Disc. Water Outlet-the Waterman, Inc.*, No. 6:16-cv-588-Orl-28GJK, 2016 U.S. Dist. LEXIS 176290, at \*4-5 (M.D. Fla. Dec. 20, 2016); *Rodriguez v. Fuji Sushi, Inc.*, No. 6:08-cv-1869-Orl-22KRS, 2009 U.S. Dist. LEXIS 43487, at \*11 (M.D. Fla. May 21, 2009) ("[A]n inherent conflict exists in FLSA settlements when the plaintiff's attorney negotiates both the plaintiff's award and his own fee"). Mr. Zidell's law firm, however, refused to answer. Instead, it reaffirmed that "the $22,500 is a global offer," i.e., inclusive of fees and costs. Exhibit 2 hereto at p. 4. The undersigned counsel thereafter again asked, "what are the fees/costs you seek in connection with your $22,500 offer." *Id.* As punishment for inquiring about its fees/costs, Mr. Zidell's law firm immediately increased its offer from a "global" settlement of $22,500 to $22,500 ***plus*** attorneys' fees as determined by the Court. *Id.* at p. 2. It is clear, therefore, that Mr. Zidell's fee demands have nothing to do with the actual time he spent in this case. Instead, Mr. Zidell and his law firm have abused the judicial process to extort as large a payout as possible regardless of whether it is reasonable. Mr. Zidell now demands 2.3 hours in fees[3] for that bad faith negotiation tactic, which include 0.6 hours for an "inter-office meeting" regarding its bad faith extortion attempts, and 0.5 hours to "review" related emails.

The day after plaintiff accepted the offer of judgment [DE 47], Mr. Zidell and his law firm began to make multiple telephone calls and send multiple unnecessary emails to attempt to "settle" their unreasonable fee demand of, at the time, $12,500. Despite multiple emails and telephone calls, neither Mr. Zidell nor any of his associates ever offered to lower their unreasonable fee demand. Instead, Mr. Zidell and his law firm demanded an unreasonable

---

[3] Fee Entries (Exhibit 1 hereto) at Nos. 50-51, 53, 74 (because the time entries are block-billed, it is impossible to determine with any precision how much time was spent on each discreet task).

$12,500 in fees under threat that it would be more expensive for defendants to defend against Mr. Zidell's bad faith fee motion.  This was an abuse of the judicial process.  The FLSA was not intended to allow plaintiffs' counsel to coerce an exorbitant "fee" payout by threatening to file unreasonable fee motions that would be costly to defend against.  Mr. Zidell now demands an exaggerated 12.4 hours[4] for his and his law firm's multiple bad faith emails and telephone calls made after plaintiff's acceptance of the offer of judgment.

As further example of bad faith churning, Mr. Zidell's associate conducted a 7-minute telephone conversation with defendants' counsel at 9 a.m. on December 7, 2016.  Immediately after the conference (at 9:07 a.m.), defendants' counsel emailed Mr. Zidell's law firm (Exhibit 2 hereto at p. 14) to confirm the telephone conversation: "Pursuant to my telephone conversation with Rivkah this morning at 9am, we believe your demanded fees are exaggerated and done in bad faith."  Mr. Zidell's law firm responded with the same bad faith attempt to coerce an unreasonably high payout: "It obviously is going to cost your client in fees to litigate the fee motion."  Counsel Emails (Exhibit 2 hereto) at p. 14.  Mr. Zidell managed to stretch that 7-minute telephone call into a 1.1-hour[5] fee demand: Mr. Zidell's associate billed an unreasonable 0.6 hours to "prepare" for and conduct that 7-minute conference, while Mr. Zidell billed an additional 0.5 hours to meet with his associate and "discuss call with opposing counsel."  Such bad faith churning should not be rewarded with any fee award.

**B.    8.6 hours for unfiled conversion claim was in bad faith.[6]**

Plaintiff never asserted a conversion claim in this case, is not a prevailing party for a conversion claim, and there is no entitlement for fees for a conversion claim even if it were pled.

---

[4] Fee Entries (Exhibit 1 hereto) at Nos. 75, 76, 79, 81-84, 86, 89, 90, 92-95, 98-100, 102-104, 106-108.
[5] Fee Entries (Exhibit 1 hereto) at Nos. 107-108.
[6] Fee Entries (Exhibit 1 hereto) at Nos. 2, 38, 43, 47, 52, 64-65.

Mr. Zidell knows this.  However, Mr. Zidell and his law firm nonetheless demand in their fee motion 8.6 hours in fees relating to plaintiff's unpled conversion claim.  This is bad faith.

### C.  17 hours for unnecessary meetings between Mr. Zidell's law firm and plaintiff was in bad faith.[7]

Plaintiff's Complaint [DE 1] asserted **_one_** count for unpaid overtime.  As Mr. Zidell concedes [DE 60 at p. 4], Mr. Zidell's law firm "has been primarily handling FLSA cases, similar to the instant lawsuit, for approximately 18 years."  Despite Mr. Zidell's years of experience and the simplicity of this case, Mr. Zidell now demands an exorbitant 19 hours to meet with his client, when at most 2 hours would be reasonable and 17 hours would be excessive.  No economically rational person of means would pay for 19 hours of meetings in the context of this one count FLSA overtime claim.  "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means … the economically rational person engages in some cost benefit analysis."  *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988).

### D.  6 hours to "finalize" an unnecessary, agreed-to motion for costs was demanded in bad faith.[8]

Mr. Zidell's law firm demands in bad faith **_6 hours_** to "[f]inalize cost motion" on November 14, 2016.  That is outrageous not only because 6 hours is excessive for a simple cost motion that seeks only $980 in costs, but also because at 9:49 a.m. on November 14, Mr. Zidell's law firm stated, "Our Cost Motion is due on Friday [i.e., November 18] …. Please let me know if Defendants' oppose," and the undersigned counsel **_confirmed via email at 10:06 a.m. that same day (i.e., 17 minutes later) that defendant "agrees to pay the $980 demanded costs."_**  Costs Motion Emails (Exhibit 5 hereto) at p. 1.  No reasonable person would pay 6 hours to an attorney

---

[7] Fee Entries (Exhibit 1 hereto) at Nos. 2, 29, 39-42, 46-47, 49, 52, 60-62, 64-65, 68, 71-72, 85.
[8] Fee Entries (Exhibit 1 hereto) at No. 96.

to "finalize" a motion that is agreed to by the opposing party and would recover only $980 in costs, especially when 6 hours of attorney time (at $260/hour for Mr. Zidell's associate attorney) exceeds the costs.  In addition, Mr. Zidell filed his motion for costs at 11:32 a.m. on November 14 (Exhibit 5 hereto at p. 2).  To work 6 hours on that motion, Mr. Zidell's law firm would have had to begin working at 5:32 a.m. on November 14 and work non-stop until 11:32 a.m.  This is clearly a fabrication in bad faith.

### E.     1.8 hours for frivolous motion to strike [DE 50] was in bad faith.[9]

To further churn as many fees as possible in this case, Mr. Zidell's law firm vexatiously moved to strike the undersigned counsel's notice of settlement [DE 50] ***after*** plaintiff accepted the offer of judgment [DE 47], i.e., ***after*** the parties indisputably settled plaintiff's FLSA claim. To cause even more litigation, Mr. Zidell's motion [DE 50 at p. 2] demanded that final judgment be entered against ***both*** defendants, jointly and severally, despite the fact that the accepted offer of judgment was limited solely to Florida Beauty Express, Inc., and not against defendant Ralph Milman.  The Court denied [DE 56] plaintiff's meritless motion as moot.  Despite its lack of merit, Mr. Zidell now improperly seeks 1.8 hours in fees for that motion.

## II.     Alternatively, if the Court were to award fees, Mr. Zidell's fee demand must be reduced by 90% (after removing non-compensable entries) to reflect his bad faith, limited degree of success, block-billed time entries, and excessive fees.

Mr. Zidell and his law firm's bad faith is a special circumstance that strongly supports a denial of any fee award.  However, if the Court were to award fees to Mr. Zidell, fees for non-compensable tasks must be removed from Mr. Zidell's lodestar, and thereafter Mr. Zidell's fee award should be reduced by 90% because of his bad faith, extremely limited degree of success, block-billed time entries, and excessive fees.

---

[9] Fee Entries (Exhibit 1 hereto) at Nos. 77-78, 80.

Part II.A herein identifies non-compensable time that must be removed from Mr. Zidell's lodestar.  Part II.B herein argues that the Court should apply an across-the-board reduction to Mr. Zidell's lodestar (after removing non-compensable fees) to reflect Mr. Zidell's limited degree of success, bad faith, exaggerated billing, block-billed entries, and duplicative entries. Part II.C argues that Mr. Zidell's rates are excessive and provides a calculation for a fee award.

### A. 32.15 hours ($12,805) for unnecessary, clerical, or otherwise non-compensable tasks should be removed from Mr. Zidell's lodestar.

Before applying an across-the-board reduction to the lodestar, the Court should exclude 32.15 non-compensable hours from the lodestar calculation. *Brandt v. Magnificent Quality Florals Corp.*, 2011 U.S. Dist. LEXIS 113195, at *33-35 (S.D. Fla. Sept. 30, 2011) ("[I]n addition to adjusting the number of hours used to calculate the lodestar, the Court may apply an after-the-fact reduction of the lodestar").

### 1. 4.35 hours ($3,770) for clerical tasks must be excluded.[10]

Mr. Zidell cannot bill 4.35 hours ($3,770) for non-compensable clerical work.  By way of example, Mr. Zidell seeks 0.3 hours to scan and file summonses; 0.4 hours only to email plaintiff's Confidential Settlement Conference Statement to the Court and an ***additional*** 0.3 hours to email that same Statement to the undersigned counsel; 0.3 hours to "[a]ttempt to reach opposing counsel … via phone"; 0.3 hours for "email correspondence with opposing counsel regarding setting time to have telephone conference"; and 0.3 hours for "email correspondence with opposing counsel regarding setting time to have telephone conference. Coordinated date and time, internally calendared."[11]  Case law bars billing for such clerical work. *Machado v. Da Vittorio, LLC*, 2010 U.S. Dist. LEXIS 84047, at *7 (S.D. Fla. July 26, 2010) ("coordinating

---

[10] Fee Entries (Exhibit 1 hereto) at Nos. 7, 14, 17, 29, 34, 36-37, 39, 66, 73, 102-104, 106.
[11] Fee Entries (Exhibit 1 hereto) at Nos. 14, 36, 37, 66, 104, 106.

schedules" and "basic communications" cannot be billed as fees); *Peress v. Wand*, 597 F. Supp. 2d 1320, 1325 (S.D. Fla. 2009) ("e-filing" not billable attorney's fee); *Edwards v. CFI Sales & Mktg.*, 2012 U.S. Dist. LEXIS 126089, at *24 (M.D. Fla. Aug. 20, 2012) ("contacting court reporters, … mailing, filing, and delivering documents is not compensable").

Although Mr. Zidell also demands fees for an additional 31 time entries (for 12.5 hours) that include non-compensable clerical tasks, those additional entries are block-billed with other tasks.  It is therefore impossible to ascertain how much time Mr. Zidell demands for those non-compensable block-billed tasks.  As explained further below, those block-billed entries support a substantial across-the-board reduction to Mr. Zidell's fee demand.

### 2. 0.5 hours ($130) for redundant deposition notice must be excluded.[12]

Mr. Zidell's law firm drafted and served plaintiff's notice of taking deposition of defendants on August 12, 2016 (Exhibit 4 hereto at pp. 5-6).  However, on September 27, 2016, Mr. Zidell's law firm again "drafted" and served a redundant notice of deposition with the identical areas of inquiry and boilerplate wording (Exhibit 4 hereto at pp. 2-4).  For that redundant notice, Mr. Zidell demands fees.  That cannot be rewarded.

### 3. 1.7 hours ($533) for false return of service on Mr. Milman must be excluded.[13]

Mr. Zidell filed a verified proof of service [DE 12] falsely asserting personal service on defendant Ralph Milman.  Mr. Milman never received personal service of plaintiff's summons or complaint.  Mr. Zidell's false return of service caused the Court to enter an Order [DE 15] requiring a motion for default as to Mr. Milman.  Immediately after receiving the Court's Order [DE 15], defendants' counsel contacted Mr. Zidell's law firm to confer about the Order [DE 12]

---

[12] Fee Entries (Exhibit 1 hereto) at No. 59.
[13] Fee Entries (Exhibit 1 hereto) at Nos. 12-14, 16, 25.

and a motion for extension of time to respond to the complaint.  Mr. Zidell's law firm stated it had no objection only if defendants agree not to challenge service of process.  Mr. Zidell's law firm repeatedly (via telephone and emails) confirmed that defendants will not challenge service of process and dedicated 3 different time entries[14] confirming defendants' "non-challenge to service."  Thereafter, Mr. Zidell filed another return of service for Mr. Milman purporting to serve Mr. Milman via substitute service at Mr. Milman's place of business.  That is not proper service.  Fed. R. Civ. P. 4(e) ("[A]n individual … may be served in a judicial district of the United States by: … leaving a copy of each at the individual's ***dwelling or usual place of abode*** with someone of suitable age and discretion who resides there"); Fla. Stat. § 48.031(1)(a) ("Service of original process is made by … leaving the copies at his or her usual place of abode").  It appears Mr. Zidell's law firm knew that the return of service was invalid, and therefore wanted to make sure defendants will not challenge service.  Mr. Zidell's law firm now demands 1.7 hours in fees related to its invalid return of service, which should be excluded and, under the circumstances, constitutes bad faith.

As a courtesy, the undersigned counsel emailed Mr. Zidell explaining that the return of service reflecting personal service on Mr. Milman was wrong and Mr. Zidell should correct this practice within his firm in the future.  To review that courtesy email, Mr. Zidell now demands 0.6 hours in fees.  This too should be excluded from compensable time.

### 4.    8.6 hours ($2,769) for unfiled conversion claim must be excluded.[15]

As explained above (in Part I.B), Mr. Zidell cannot bill for an unfiled conversion claim.

---

[14] Fee Entries (Exhibit 1 hereto) at Nos. 12, 16, 25.
[15] Fee Entries (Exhibit 1 hereto) at Nos. 2, 38, 43, 47, 52, 64-65.

**5.**     **17 hours ($5,603) for unnecessary meetings with plaintiff must be excluded.[16]**

As explained above (Part I.C), Mr. Zidell cannot bill a total of 19 hours to meet with plaintiff.  Based on Mr. Zidell's substantial experience litigating cases like this one and the simplicity of this case, Mr. Zidell can, at most, bill 2 hours to meet and confer with his client.

**B.**     **Mr. Zidell's lodestar should be reduced by 90% to reflect Mr. Zidell's extremely limited degree of success, bad faith, exaggerated billing.**

After non-compensable time is removed from Mr. Zidell's lodestar, the Court should apply an across-the-board reduction of 90% to Mr. Zidell's fee demand because of his extreme bad faith and his limited degree of success due to the recovery of about 18% of plaintiff's damages demand.  The basis for the bad faith reduction has already been addressed, and this section will address reductions for limited degree of success and excessive and block-billed entries.

**1.**     **Mr. Zidell's extremely limited degree of success warrants a 90% reduction to his lodestar amount**

Controlling precedent makes clear that "the most critical factor" in adjusting a fee award is "the degree of success obtained."  *Bivins v. Wrap It Up, Inc*., 380 Fed. App'x 888, 891 (11th Cir. 2010); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  "A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).  "[I]n addition to adjusting the number of hours used to calculate the lodestar, the Court may apply an after-the-fact reduction of the lodestar where the Plaintiff achieved only partial or limited success, and this is true even where the Plaintiffs' claims are … non-frivolous and raised in good faith."  *Brandt*, 2011 U.S. Dist. LEXIS 113195, at *33-35; *Maciejczyk*, 2013 U.S. Dist. LEXIS

---

[16] Fee Entries (Exhibit 1 hereto) at Nos. 2, 29, 39-42, 46-47, 49, 52, 60-62, 64-65, 68, 71-72, 85.

184998, at *12 (reducing the lodestar amount by 30% to reflect the degree of success after applying a 50% across-the-board reduction to the number of hours requested).

Mr. Zidell's law firm attained an extremely limited degree of success, which strongly supports a substantial reduction in its lodestar amount after the Court excludes non-compensable time.  Plaintiff was awarded $7,500 in damages [DE 55].  That is only ***18%*** of the $41,277.50 plaintiff originally demanded [DE 8].  Such a limited degree of success warrants an 90% reduction in Mr. Zidell's fee award, if any.  *Popham*, 820 F.2d at 1581 (reducing the lodestar by 67% based on the attorney's limited degree of success); *Brandt*, 2011 U.S. Dist. LEXIS 113195, at *37-38 (reducing the lodestar by 70% based on the attorney's limited degree of success after excluding non-compensable hours).

### 2. Mr. Zidell's fee demand should be substantially reduced because of unreasonably excessive fee entries and block-billed entries

Mr. Zidell's law firm submitted a total of 109 time entries, the majority of which are excessive and block-billed.  An hour-by-hour analysis of Mr. Zidell's unreasonable fee demands would be overly burdensome because his fee entries lump together discrete tasks and make it impossible to determine how much time was spent on each task.  The Court therefore should reduce Mr. Zidell's fees by 90% after deducting non-compensable hours from the lodestar.

### a. Mr. Zidell's grossly exaggerated billing requires an across-the-board reduction to its lodestar.

An FLSA "plaintiff must always attempt to litigate a matter in the most efficient means possible."  *Simon v. Leaderscape LLC*, 565 F. Supp. 2d 1332, 1336 (S.D. Fla. 2008).  "Attorney's fees arising from hours that are excessive ... should be excluded from an award of attorney's fees."  *Machado*, 2010 U.S. Dist. LEXIS 84047, at *4-5. Mr. Zidell specializes in FLSA cases and has 18 years of experience litigating FLSA claims.  If any attorney can litigate an FLSA case efficiently, Mr. Zidell can.  Despite his obligation to exercise billing judgment,

Mr. Zidell has billed unreasonably excessive fees.  The following is a representative sample to aid the Court's determination.

As explained above (Part I.D), Mr. Zidell demands an exorbitant **_6 hours_** to "[f]inalize cost motion" on November 14, 2016, which is outrageous exaggerated in bad faith.

Separate from his exaggerated demand for **_4.4 hours_**[17] to meet with his client to prepare for the judicial settlement conference in this case, he also demands an exorbitant **_4.1 hours_** to meet with his associates to prepare for the settlement conference, an additional **_0.5 hours_** to **_"attempt"_** to contact plaintiff to discuss the settlement conference, an additional **_1.6 hours_** allegedly to schedule the settlement conference, and an additional **_1.6 hours_** to supposedly confer with the undersigned counsel regarding the settlement conference.[18]  In total, Mr. Zidell demands an outrageous 12.2 hours to confer with his client, his associates, and the undersigned counsel in preparation for the 3-hour settlement conference.  That is not reasonable.

### b.     Mr. Zidell's fees should be reduced for block-billing, redacted, and vague billing.

"[T]he fee applicant … must supply the court with 'specific and detailed evidence' in an organized fashion. … Where the documentation is inadequate, the court may reduce the award accordingly." *Reppert v. Mint Leaf, Inc*., 2013 U.S. Dist. LEXIS 17105, at *5 (S.D. Fla. Jan. 31, 2013); *Hensley*, 461 U.S. at 437 (party must "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").  Block-billed, redacted, and vague time entry descriptions support an across-the-board fee reduction.  *Machado*, 2010 U.S. Dist. LEXIS 84047, at *9-12 (reducing two groups of block-billed entries by 50% and 75% respectively);

---

[17] Fee Entries (Exhibit 1 hereto) at Nos. 39-41, 46.
[18] Fee Entries (Exhibit 1 hereto) at Nos. 34, 38, 43-45, 48.

*Estrada v. Alexim Trading Corp.*, 2012 U.S. Dist. LEXIS 138194, at *31 (S.D. Fla. Sept. 26, 2012) (30% reduction to billed hours due to block-billing).

Mr. Zidell submitted 78 block-billed entries for 53.7 hours.[19]  For example, the 0.6-hour July 15, 2016 entry[20] contains 5 distinct tasks, but does not specify how much time was spent on each task: (1) "Draft Joint Notice of Consent to Magistrate"; (2) "drafted … Certificate of Interested Parties"; (3) "filed Certificate of Interested Parties"; (4) "drafted … Notice of No pending, Refiled, Related or Similar Actions"; and (5) "filed Notice of No pending, Refiled, Related or Similar Actions."  As further example, the 0.5-hour May 20, 2016 entry[21] contains 4 distinct tasks without specifying how much time was spent on each task: (1) "review flsa order"; (2) "calendar deadlines to track"; (3) "draft … statement of claim"; and (4) "file statement of claim."  Such entries lack "sufficient particularity so that the district court can assess the time claimed for each activity."  *Barnes*, 168 F.3d at 427.  In addition, Mr. Zidell demands up to 18.9 hours[22] for entries that are block-billed with non-compensable clerical tasks.  By way of example, Mr. Zidell demands up to 0.4 hours[23] on September 27 to "calendar[] internally" Court deadlines; up to 0.3 hours[24] on August 25 to "update" the "internal calendar"; up to 0.4 hours[25]

---

[19] Fee Entries (Exhibit 1 hereto) at Nos. 1-6, 8, 10-12, 14-15, 18-35, 38, 42-44, 47-60, 63, 67, 70, 72, 74, 77.
[20] Fee Entries (Exhibit 1 hereto) at No. 27.
[21] Fee Entries (Exhibit 1 hereto) at No. 5.
[22] Fee Entries (Exhibit 1 hereto) at Nos. 3-6, 21-22, 26-28, 30-33, 48-50, 54, 57, 59, 63, 69-70, 78, 80, 82, 87-88, 91, 93-94, 96-97.
[23] Fee Entries (Exhibit 1 hereto) at No. 57.
[24] Fee Entries (Exhibit 1 hereto) at No. 33.
[25] Fee Entries (Exhibit 1 hereto) at No. 87.

on October 24 to "internally calendar[] … payment of monies from Defendants," and up to 11.8 hours[26] to "file" documents with the Court.

Mr. Zidell also bills 3.7 hours for entries that Mr. Zidell redacted and therefore cannot be analyzed.[27]  Those entries also lack "sufficient particularity so that the district court can assess the time claimed" and must therefore be reduced.  *Barnes*, 168 F.3d at 427.

### c.    24.4 hours for internal communications and redundant tasks should be reduced.[28]

Mr. Zidell has not shown how 24.4 hours of interoffice communications between Mr. Zidell and his associates were in any way necessary.   "Billings for 'intraoffice communication between plaintiff's multiple lawyers … are disfavored and are subject to close scrutiny to prevent abuse.'"  *Smith v. Werner Enters.*, No. 14-0107-WS-B, 2015 U.S. Dist. LEXIS 153536, at *17-18 (S.D. Ala. Nov. 13, 2015).   For example, Mr. Zidell demands an unreasonable 2.8 hours[29] to "review [defendants' affirmative defense] with associate … [and] meet with associate to preparation of and review for this issue."

Moreover, Mr. Zidell demands 1 hour[30] for "Reviewed Defendants' written objections to our fee ledger produced with draft fee motion.  Inter-office meeting with associate regarding follow up in order to attempt to resolve matter and Defendants' objections."  Not only is that time excessive, it is redundant to the 1-hour entry[31] from Mr. Zidell's associate on the same day for the exact same work: "Reviewed Defendants' written objections to our fee ledger produced with

---

[26] Fee Entries (Exhibit 1 hereto) at Nos. 3, 5-6, 8, 14-15, 27, 30-31, 69-70, 78, 80, 96 (because the entries are block-billed it is impossible to determine precisely how much time was spent filing court documents).
[27] Fee Entries (Exhibit 1 hereto) at Nos. 46, 60, 64, 65, 72, 73.
[28] Fee Entries (Exhibit 1 hereto) at Nos. 4, 7, 11, 16, 18-20, 23, 26, 28, 32, 33, 35, 38, 42-45, 47, 51-57, 72-74, 81-82, 86, 98-99, 105, 108.
[29] Fee Entries (Exhibit 1 hereto) at No. 44.
[30] Fee Entries (Exhibit 1 hereto) at No. 98.
[31] Fee Entries (Exhibit 1 hereto) at No. 99.

draft fee motion.  Inter-office meeting with [Mr. Zidell] regarding follow up in order to attempt to resolve matter and Defendants' objections."  In addition, Mr. Zidell's associate billed 0.7 hours to draft and file plaintiff's meritless motion to strike [DE 50] and an additional 0.7 hours to draft and file the same meritless motion [DE 50] on the same date.[32]  Those "[r]edundant hours must be excluded from the reasonable hours claimed by the fee applicant.'"  *ACLU v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999).

### C.      Mr. Zidell's and his associates' billing rates are excessively high.

Reasonable hourly rates are (1) $350/hour for Mr. Zidell; (2) $230/hour for K. David Kelly, Esq.; (3) $175/hour for Rivkah Jaff, Esq.; (4) $175/hour for Stephen Fox, Esq.; and (5) $175 for Allyson Morgado.  Pursuant to Local Rule 7.3(a), defendants submit an affidavit regarding their fee arrangement (Exhibit 6 hereto).

If the Court were to award Mr. Zidell any fees, such fees should be calculated as follows:

| Attorney | Rate | Hours Demanded | Non-Compensable | Compensable | Total Amount |
|---|---|---|---|---|---|
| Jamie H. Zidell | $ 350.00 | 30.4 hrs. | 9.3 hrs.[33] | 19.1 hrs. | $      7,385.00 |
| K. David Kelly | $ 230.00 | 2 hrs. | 0 hrs. | 2 hrs. | $         460.00 |
| Rivkah Jaff / Stephen Fox | $ 175.00 | 34.35 hrs. | 13.05 hrs.[34] | 21.3 hrs. | $      3,727.50 |
| Allyson Morgado | $ 175.00 | 0.5 hrs. | 0 hrs. | 0.5 hrs. | $           87.50 |
| **TOTAL** | | | | | **$    11,660.00** |

After removing non-compensable hours, fees would be $11,660.  The Court should apply a 90% across-the-board reduction for Mr. Zidell's bad faith, limited success, block-billing, exaggerated fees, redacted and vague entries.  Mr. Zidell's fee award should therefore be, at most, $1,166.

---

[32] Fee Entries (Exhibit 1 hereto) at Nos. 78, 80.

[33] Fee Entries (Exhibit 1 hereto) at Nos. 2, 16, 25, 38, 41, 43, 46, 52, 60-62, 64-65, 68, 71-73, 85 (2 hours of compensable time were added in this analysis to account for meetings with plaintiff).

[34] Fee Entries (Exhibit 1 hereto) at Nos. 7, 12-14, 17, 29, 34, 36-37, 39, 40, 42, 47, 49, 59, 66, 102-104, 106.

Respectfully submitted,

Mavrick Law Firm
Attorneys for Defendants
Florida Beauty Express, Inc. and
Ralph Milman
1620 West Oakland Park Blvd., Suite 300
Fort Lauderdale, Florida 33311
Telephone: (954) 564-2246
Peter T. Mavrick, Esq.
E-mail: peter@mavricklaw.com
Victor M. Velarde, Esq.
E-mail: vvelarde@mavricklaw.com

BY: s/ Peter T. Mavrick
Peter T. Mavrick
Florida Bar No.: 0083739
Victor M. Velarde
Florida Bar No.: 0105620

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served by means of the Court's electronic filing system on December 30, 2016, on all counsel of record or parties on the attached service list.

BY: s/ Peter T. Mavrick
Peter T. Mavrick
Florida Bar No.: 0083739

**SERVICE LIST**
J.H. Zidell, Esq.
zabogado@aol.com
K. David Kelly, Esq.
david.kelly38@rocketmail.com
Rivkah F. Jaff, Esq.
rivkah.jaff@gmail.com
Stephen M. Fox, Jr., Esq.
stephen.fox.esq@gmail.com
J.H. Zidell, P.A.
300 71st Street, Suite 605
Miami Beach, Florida 33141
Attorney for Plaintiff